The first case for argument is 18-2365 Freebit v. Bose. Ms. Fenton, whenever you're ready. Thank you, Your Honor. May it please the Court, Tia Fenton on behalf of the appellant Freebit. This is an appeal from two IPRs in which the board found the claims of Freebit's 436 and 995 patents obvious over the Berg, Barming, and Aber references. Freebit's patents were issued over the Berg reference based on a contact surface with a curvature that has, one, it conforms or substantially conforms to the concha, and two, it fits closely against the concha, including at the extension of the crews of the helix. It is this curvature that's the focus of the appeal. The board committed legal error in its ultimate obviousness conclusion and in its failure to conduct the analysis using the actual language of the claims. The board also erred by making factual findings about the references that are inconsistent with the documents themselves. One such error was finding that the prior art does not teach away. The law is clear that if a reference leads in a direction divergent from a path taken by Freebit but is the law also not clear that all that's required is a person of ordinary skill would have merely favored one disclosed over another? I mean, picking from several options, some portions have some benefit and some not. And it's gains and costs, and I don't see it teaching away here just because someone emphasizes preferences with regard to a selection of one option. That doesn't foreclose or teach away the other option, in my view. So tell me why I'm wrong. Your Honor, I respectfully, obviously, disagree, because I think with respect to that case law that you're referring to, that's a different factual situation than here. Here we have a reference that specifically discredits the primary reference, Berg, and also other references. Well, no, it doesn't discredit Berg. It only says that the C-shaped pad is uncomfortable, right? No, it actually gives, it criticizes Berg, stating that it has four problems, poor sound, trapped sweat, it's uncomfortable, and it slips from the ear. And it attributes all of these problems to the large C-shaped surface of Berg. So since the reference says these things about Berg, you think that means nobody would be motivated to take Berg and try to cure one or more of these problems with a different version that is similar to Berg? But, hmm, I can cure discomfort by doing this. Hmm, I can cover sweat or smell or whatever by doing this. I mean, don't you think that you could make iterative improvements on Berg? And wouldn't those actually be suggested by this reference, that it would be good for people to take Berg and make some improvements on it? We think this isn't a situation that you're referring to that requires a weighing of advantages and disadvantages, as posited by the board. I'll tell you, I read farming as actually suggesting that somebody should undertake the process of making Berg more comfortable. So I actually read it as providing the motivation to combine these things. You think it teaches a way, and I think it's telling you there's a problem with this reference, and somebody needs to fix these problems, and that that's what the patent in this case did. It fixed one of the problems. Well, in farming, though, it gives a solution to this problem. That doesn't mean there aren't other solutions, right? I mean, it's too hot in here, or it's too cold in here. There are two solutions. You can put on a jacket, or you could turn the heat up. Farming calls it this gap, this pad with the gaps and the voids. At appendix 2389, it says that it's the most important element of this invention. And because it specifically criticizes and distinguishes over devices like the prior art, like a continuous earpiece or C-shape or similar, it seems to be the epitome of a teaching away reference. I mean, it expressly distinguishes over the primary reference. It touts the actual importance of maintaining these gaps, especially at an area right where our patent claims are directed to having a curved surface that fits closely and substantially conforms. Farming, on the other hand, says no. Leave it. It's very important. No matter what embodiment we have in farming, it's very important to leave a gap here. And it discredits and discourages investigation. In the case law, like Dupuis, Spine, and Galderma, this fits squarely in that case law, I would represent. Speaking of representing, I've got a question for you. Sure. At 39, the blue brief says, Dr. Caselli also acknowledged under cross-examination that Aver's use of the term partially embraced would indicate to a person of skill in the art that the groove would only, quote, touching part, close quote, testifying that, quote, embrace could be taken to imply touching and partially would be in part touching. At 30 of the red brief, the red brief says this is not an accurate description of Dr. Caselli's testimony. Rather, he stated, I don't know exactly what Aver intended with the difference of the words partially embrace versus partially surround in claim number six. However, partially surround can connote that it is indeed over the rib-like portion, at least in part, but not necessarily requiring touching it. I think they have a pretty good argument that that's not a fair statement of his testimony. And I want you to be able to respond to that. Sure. I think the context of us saying that or quoting that testimony in part is it gets to the root of this issue. And that's how the board compounded it. Wait a minute. It gets to the root of it as you quote it. Your problem is it's not accurately quoted. If you change the meaning of what he said in that entire phrase, set of phrases. I think it's difficult to, obviously that was not intentional, but I think it's difficult to understand what Dr. Caselli was testifying about. But then you can't rely on him. You're saying in the blue brief that he made an admission, but you're right. It's ambiguous. And he in effect says that, I don't know. And you left that out. But we took that to mean in our quoting of that particular quote, if I remember correctly, that was Your quote's on page 39. And I get what you're trying to use it for. The problem is I think it's at best for you ambiguous that he's saying, I don't know. And then he says it could connote that. I think it's because if you look at his testimony in the full context, the problem is we're relying on this accommodation term. And there's no definition of this term. It's not in the claim limitations. That's not my beef. Okay, I'm sorry. Maybe I misunderstood. My beef is that you're inaccurately representing what he said in order to try and get an admission, which isn't there. That's my beef. And they pointed it out in the red brief, so you should be prepared to respond to that. Yes, that was our understanding of his testimony, though, Your Honor. That he used the term partially surround to connote a structure that is either it can be partially embraced or touch in part or not touch at all. Okay. I'm not going to eat up all your time on this. But I was hoping for more of an explanation than, well, that's how we understood it. Okay. Keep going. I will look at it more closely and reserve some time to address it more appropriately. Thank you, Your Honor. And so getting back to the teaching away reference and coming back to some of Your Honor's other questions, again, we think that the case law, for instance, like Behr and cases like that, are not on point because this isn't a situation where you weigh simultaneous advantages and disadvantages. Varming teaches no advantages of a continuous contact surface. It only criticizes it, it only insists on a void at the cruise of the helix, and it only teaches advantages associated with its two- or three-pad configuration. And this isn't a matter of preference here when you look at the prior art. Varming says a large continuous contact surface like Berg is workable, where Varming says it's workable but the preference for the disclosed solution with gaps. So it's not a situation where there's a better or best solution here. Varming's solutions and its criticisms and discouragement against the references like Berg teach away, and we think takes that outside of the case law where maybe it's not clear, like in Medicam, the disclosure isn't clear with respect to teaching away. We think it puts it squarely in the case law like Dupuis, Fine, and Galderma, where they specifically say that a reference or prior art teaches away if it discourages investigation into something that is the claimed invention. And here we think that Varming and these references discourage against investigating into the claimed earpiece, which does have a continuous contact surface that substantially conforms and fits closely to the concha at the cruise of the helix. And, Your Honors, even when the references are, if they are properly combinable, we believe the board erred in finding that the claim elements are met. ABER teaches that horn-like extension as what produces the secure holding effect of the ear unit. And according to ABER, because the grooves that are labeled 18 and 20 partially surround or partially embrace the portions of the ear, they also assist in retaining the earpiece. So the board found that the disclosure of this partially surrounding or embracing an ear portion satisfies both of Freebit's claim limitations such that ABER's groove substantially conforms and fits closely to the cruise of the helix. But this finding isn't supported by the substantial evidence. This may be referring to the testimony that you're talking about, but it's our understanding that Bose's expert even testified that ABER teaches a groove that either does not touch or only partially touches the ear anatomy it's surrounding. And so assuming bodily incorporation, a groove that only partially touches or doesn't touch the ear anatomy at all does not substantially conform or fit closely to the concha wall. And the board, we think that a lot of the issues here are based on the board compounding these errors by relying on an alleged synonym accommodate to find that the claim limitations are met. Bose introduced this accommodating term in the underlying proceedings to try to force the prior art to read on the curvature of Freebit's claims. And throughout its analysis, the board errs by adopting this approach, focusing on whether accommodation is achieved. But none of the claims are directed to accommodating a cruise of the helix. In fact, that accommodation word is not even present in any of the claims. And in the board's analysis, there's no indication of what accommodation actually means. Sometimes it means a gap. Sometimes it means to partially surround or embrace. Sometimes it means to straddle. Sometimes it means touching or not touching. And sometimes it means aligned with. And so this accommodation term cannot be a substitute for the actual claim language, substantially conforms and fits closely, and certainly not when it has all of these various meanings and when the board and the expert and the Bose are applying a different meaning at different times. It's undefined. And this use of the term to conduct the John Deere analysis and to find obviousness is so far removed from the actual claim language that it constitutes reversible error. We are into your rebuttal. Oh, thank you. Thanks. Good morning, Your Honors. Andrew Kapsidis of Fish and Richardson on behalf of the Pele-Bose Corporation. On page three of the red brief, you say, the FreeBit patents purported invention thus involve no more than the use of a known solution to a known problem with no assertion of unexpected results or other secondary considerations. Do you agree this is a straightforward obviousness determination? Absolutely, Your Honor. This is classic obviousness in KSR style. The problem that the FreeBit patents allegedly solve is a very old one, as is the solution to it. Yeah, some very old patents, isn't it? Exactly. The problem, as Your Honor is acknowledging, was first recognized, at least according to our records, in the ABER patent in 1928. This problem of having to accommodate for or do something to not interfere with the crucif-helix or the contra ridge, as it's otherwise known. And logic dictates that when you have a straight piece that's interfering with the ridge, that you have two, and likely only two, solutions. One is to just remove the part of the flat piece that interferes, and the other is to form some sort of groove in it so that it conforms to the ridge. And this is exactly the kind of situation where there were two finite solutions that yielded nothing more than predictable results. ABER opted for the groove solution, and Varming opted for the gap solution. So you have the groove and the gap, two solutions known in the prior art, well before the time of FreeBit's patents. In opting for the groove solution, so ABER discloses a groove, a team that, quote, partially embraces the crucif-helix or the contra ridge. I'd like, I don't know about my brethren, but I'd like you to focus on the Casali testimony, because that's where everything, I think your opposing counsel hang their entire hat on attacking his testimony in one fashion or another. And I've pointed out what I think the fundamental flaw is. I had other questions for your opposing counsel, but they all circle around their view of what his testimony is. And so I'd like you to address that. Well, I think your Honor is exactly right that the quoting and paraphrasing and describing of Dr. Casali's testimony was not accurate. Well, it's not a question of just not accurate. My view is I don't see a nefarious action by your opposing counsel, but what I do see is it lifts me like it's all attorney argument. And they're trying to argue that he's saying something and picking and choosing very carefully to do that. I think that's correct, Your Honor. Obviously, the standard here is substantial evidence, not preponderance. And the Board's final written decisions in both of these IPRs are extremely well buttressed with testimony of Dr. Casali. Over and over again they state, we find Dr. Casali's testimony credible and persuasive. We agree with Dr. Casali. We credit this testimony and things like that. And this goes to the findings of No Teaching Away, the disclosures of what Aber and Varming disclosed, as well as the ultimate conclusion that the proposed combination meets every single limitation of the claims, including separately the substantially conforming and closely fitting limitations. All of those points are extremely well cited in the written decisions of the Board, with cites not just to Dr. Casali's testimony, but also to the prior art references themselves. I would like to speak for a moment about the Teaching Away issue. I think it's important to note that Varming never criticizes Aber or the prior art groove solution. They never criticize that. Instead, Varming criticizes the Berg reference, and he criticizes it on the basis that it doesn't do any solution for the crucifelix problem. It does neither a groove nor a gap. So I think the criticism that Freebit relies on is misplaced, because everybody acknowledges that Berg 307 had a problem, and Varming solved it one way, and Aber solved it another. That's the F.R. final written decision at 32, more or less. That's correct, Your Honor. So Varming addresses the exact same problem as the Freebit patents, how to accommodate the crucifelix. So it states specifically that Berg's lack of any accommodation, lack of addressing this issue, causes instability and discomfort. That's at Appendix 2385 in the Varming reference. And there's really no debate that the criticisms in Varming are leveled directly at Berg itself for not proposing any solution. In opting for his gap solution in Varming, as opposed to the prior art groove solution, it's because he wants to maximize airflow. He wants to create an earpiece that allows more ventilation to avoid perspiration, but also to let ambient sound penetrate the ear. And that's fine. That's a designer's choice. But he explicitly recognizes the balance that he's making, the tradeoffs at Appendix 2389 and 90. He recognizes the tradeoffs that he is sacrificing some comfort and stability by having less contact surface area. And obviously from that, Dr. Casale opined that a person of ordinary skill in the art seeking to focus instead on stability and comfort would be clearly drawn to the solutions involving more contact surface, such as ABR. Lastly, I would just like to address the two cases that Ms. Fenton raised. The first was the Gauderma case, which I actually think is a very good case for us, in that Gauderma states that this had to do with a chemical composition, and it states, a teaching that a composition may be optimal or standard does not criticize, discredit, or otherwise discourage investigation into other compounds. And that's exactly what we have here at most. I think Varming does provide the motivation to combine. But even if you look at it as somehow favoring the gap solution over the groove solution, it certainly doesn't amount to a discouragement or a criticizing of that. In fact, it's quite silent on that. It's a balancing, of course. Absolutely, Your Honor. And then Dupuis Fine, I won't dwell on it, but again this is a case that stands for the proposition that a reference doesn't teach away if it merely expresses a general preference for one alternative over another. And that's exactly what we have with Varming. Unless the Court has any other questions, I will yield the remainder of my time. Thank you. Thank you, Your Honor. Just to address your earlier question, I looked at- Yes, please, Ms. Fenton. Yes, please, Ms. Fenton. I looked at the testimony, and it does say that Dr. Casale said he didn't know, but he didn't stop there. What we quoted was accurate, and he went on to make this concession, or partial concession, and I actually think it's consistent with the remainder of his testimony, for instance, at Appendix 3257. So I just wanted to make the record, if the record somehow indicated that what we quoted was incorrect- I thought it was misleading. I really did. Okay, I apologize. And as I said, I thought it was a turning argument. I'm not slamming you, and I would if I thought you were doing something bad and making a misrepresentation to the Court kind of thing, but I thought it was misleading. Okay, thank you, Your Honor. And just to summarize, and I know I have like 50 seconds left, but we do not think that this is the usual teaching away argument. We think that there's an express discrediting and discouraging way from free bets invention, and I would like to, with respect to the claim construction issue, I would just like to direct your attention to Appendix 13 through 14 and 63 through 64. I don't have time to read it now, but I think it's a very good snapshot of how the Board's findings and all of the testimony and all of the argument is premised on whether there's motivation to and the ability to accommodate the extension of the crucible helix, not whether there was substantial confirmation or a close fit to the concha, which are actually the claim limitations. And so we respectfully submit that this fact alone constitutes reversible error at a minimum remand so that the Board can evaluate the art and the obviousness using the actual claim terms. Thank you.